José Salas Noa, demandante y apelado *v.* Germánico S. Belaval, demandado y apelante.

Núm. 6564.—*Sometido:* Abril 23, 1937. *Resuelto:* Julio 19, 1937.

*Emilio S. Belaval,* abogado del apelante; *E. H. F. Dottin,* abogado del apelado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

██ El 17 de octubre de 1931 José Salas Noa, por medio de su abogado Enrique Campillo, demandó en la Corte de Distrito de San Juan a Germánico S. Belaval en cobro de

dinero y resarcimiento de perjuicios, pidiendo sentencia a su favor por $314 por el primer concepto y por $1,275 por el segundo.

Alegó substancialmente en su demanda que en el pleito seguido por el demandado Belaval contra Isabel Agostini había sido nombrado por la corte, a solicitud y bajo la responsabilidad de Belaval, depositario de los bienes embargados a los efectos de asegurar la sentencia que pudiera dictarse, consistiendo dichos bienes en diez y nueve cabezas de ganado vacuno, un caballo y un burro; que aceptó y estuvo en posesión de los bienes conservándolos desde enero 30, 1930 hasta junio 30, 1931, en que Belaval se incautó de ellos alegando que le habían sido adjudicados en pública subasta; que con tal motivo incurrió en los gastos que especifica ascendentes a $601; que el ganado vacuno produjo en leche $287 que aplicó al pago parcial de los gastos alegados, y que el tener que atender el ganado le ocasionó perjuicios que razonablemente estima en $75 mensuales o sea en junto $1,275.

En octubre 30, 1931, compareció el demandado por medio de su abogado José Martínez Dávila y pidió que se ordenara al demandante que expusiera separadamente las dos causas de acción que alega en su demanda. Así lo ordenó la corte en noviembre 25 siguiente, quedando archivada la demanda enmendada en diciembre 5, 1931.

En diciembre 15, 1931, el demandado excepcionó la demanda por falta de hechos. La excepción fué resuelta diez y seis días después, por el Juez Sr. de Jesús, como sigue:

"Vista la excepción previa de falta de causa de acción, la corte la declara con lugar en cuanto se refiere a la segunda causa de acción, pues no aparece de la misma una obligación por parte del demandado a favor del demandante y el incumplimiento de dicha obligación en perjuicio del demandante. Se alega en dicha segunda causa de acción que el demandante atendió al fomento y conservación de los bienes que le dieron en depósito, con celo y diligencia de un buen padre de familia y que se le ocasionaron perjuicios que estima razonables en una suma de $75 mensuales o sea un total de $1,275; pero esta obligación no implica que el demandado haya de-

jado de cumplir una obligación que tuviere a favor del demandante toda vez que el hecho de ser depositario no implica necesariamente un perjuicio para el depositario máxime cuando éste cobra una cantidad razonable por el sostenimiento del ganado dado en depósito. Pudiera ser que el depositario sufriera perjuicios con motivo del depósito y sin embargo no ser el demandado el causante de dichos perjuicios.

"Se concede al demandante un término de diez días para enmendar su demanda en cuanto se refiere a la segunda causa de acción."

En marzo 30, 1932, se archivó la segunda demanda enmendada. En abril 8, 1932, el demandado pidió a la corte que habiendo fallecido su abogado José Martínez Dávila, lo tuviera por sustituído por el Lic. Emilio S. Belaval y la corte resolvió de conformidad.

Por su nuevo abogado, el demandado, el propio día 8 de abril de 1932, archivó un largo escrito de excepciones previas. Adujo y basó las de indebida acumulación de acciones, ambigüedad, falta de jurisdicción por razón de la cuantía, y sobre la persona del demandado, y falta de hechos determinantes de causa de acción.

El 4 de junio, 1932, la corte, por medio de su Juez Sr. Llauger, resolvió las excepciones como sigue:

"Se trata de resolver en este pleito un escrito de excepciones previas que radica el demandado y que por su extensión constituye un verdadero récord en esta clase de alegaciones. En la demanda se ejercitan dos causas de acción. La primera tiene por fin reintegrarse el demandante de ciertos gastos en que incurrió como depositario de bienes semovientes que fueron objeto de un embargo practicado a petición de Germánico S. Belaval en el pleito que seguía dicho señor contra Isabel Agostini. La segunda causa de acción tiene por fin percibir el demandante la cantidad de $1,275 como beneficios dejados de percibir a razón de $75 mensuales por haber dedicado su atención y trabajo a la conservación y custodia de los bienes embargados.

"Las partes argumentaron extensamente la cuestión y dejaron sometido el caso a la consideración de la corte. La primera excepción es de indebida acumulación de acciones. Como antes vemos por el breve sumario de las causas de acción que se ejercitan, si bien el de-

mandante tiene derecho al reintegro de las cantidades realmente gastadas en la conservación de los bienes secuestrados que fueron puestos bajo su celo y cuidado, no vemos qué responsabilidad puede tener el demandado en este caso (demandante en el caso del secuestro), por los beneficios dejados de percibir por el demandante. Claramente las acciones no son acumulables y es de declararse con lugar la excepción de indebida acumulación de acciones.

"Como la resolución de esta excepción hace innecesario que se consideren las demás, toda vez que si las mismas no son acumulables, el demandante en este caso podría proseguir en esta acción cualquiera de las dos causas o razones de pedir que ejercita en este pleito, procede entonces que concedamos un término prudencial al demandante para que enmiende su demanda escogiendo aquella causa de acción que estime conveniente a su derecho, y en tal virtud se le concede un término de diez días para radicar una demanda enmendada."

Cuatro mociones presentó el demandante por su abogado Campillo pidiendo prórrogas para enmendar su demanda. Accedió la corte, y en agosto 16, 1932 archivó su tercera demanda enmendada que no cumple con lo ordenado en la resolución de junio 4, 1932, si que vuelve a alegar las dos causas de acción que alegó desde un principio. De la primera causa de acción elimina el hecho en que se hacía constar que las vacas en depósito habían producido leche por valor de $287 que el demandante había aplicado al pago parcial de los gastos reclamados, y así en vez de limitarse a reclamar el saldo de $314 como antes, pide sentencia por la totalidad de los gastos o sea por $601. En cuanto a la segunda causa de acción que se fundaba en lo que había el demandante dejado de percibir—$75 mensuales—por lo que ganaba en sus ocupaciones habituales por cumplir con las obligaciones del depósito, se alega que el demandante aceptó el cargo de depositario a instancias del demandado y bajo su promesa de retribución, siendo el precio razonable de dicha retribución no estipulado específicamente, $75 mensuales. La demanda está firmada por el abogado Enrique Campillo.

Así las cosas, transcurrieron los meses de septiembre y octubre sin que nada conste que se actuara en el pleito, apareciendo radicada en el mismo en noviembre, 12, 1932, una moción del demandante por otro abogado, el Sr. Quirós Méndez, pidiendo la anotación de rebeldía del demandado por no haber contestado la tercera demanda enmendada. Tres días después el secretario de la corte anotó en efecto la rebeldía.

Permanece el pleito en tal estado por más de siete meses y en junio 28, 1933, se radica la petición del demandante por el abogado E. H. F. Dottin sobre inclusión del mismo en el calendario para vista. La siguiente constancia de los autos es la sentencia de la corte dictada dos días después, como sigue:

"José Salas Noa demandó a Germánico S. Belaval en cobro de $601 que aquél empleó en el cuido y la conducción y alimentación de un ganado que Belaval embargó y le hizo entregar como depositario en el pleito civil número 11,456 incoado por Germánico S. Belaval contra Isabel Agostini ante esta misma Corte; y en cobro también de $1,217.50 como sueldos desde febrero 23 de 1930 hasta junio 30 de 1931 como administrador de una finca del dicho Belaval a razón de $75 mensuales.

"Trátase en este caso de la tercera demanda enmendada, la que está jurada y contiene dos causas de acción y fué notificada al abogado del demandado y radicada en Secretaría el 16 de agosto de 1932.

"El demandado no hizo alegación en contra de la tercera demanda enmendada y en 15 de noviembre de 1932 a petición del demandante se anotó la rebeldía de dicho demandado.

"En el día de hoy se llamó este caso a juicio oral, por su orden de señalamiento, compareciendo únicamente el demandante en persona y asistido de su abogado quien anunció estar listo para el acto. Estando anotada en forma la rebeldía del demandado, se procedió a celebrarlo.

"En su virtud, el demandante leyó sus alegaciones, introdujo su prueba documental y testifical y sometió el caso sin argumentar.

"Y la corte por el resultado de dicha prueba, dicta sentencia declarando con lugar la demanda en todas sus partes y en su consecuencia, condena al demandado Germánico S. Belaval a pagar al demandante José Salas Noa la suma de $601 por los gastos reclamados

en la primera causa de acción, más $1,217.50 por los sueldos devengados por el demandante como administrador de una finca del demandado, reclamados en la segunda causa de acción, y además las costas sin incluir éstas honorarios de abogado.''

Notificado el demandado el 17 de julio, presentó el 4 de agosto siguiente una moción jurada acompañada de un *affidavit* de méritos y de la contestación, pidiendo a la corte que dejara sin efecto su sentencia y ordenara la apertura de la rebeldía con permiso para contestar. En noviembre 6, 1933, radicó el demandante una moción jurada oponiéndose a la del demandado. Sobre el incidente se oyó prueba y la corte, por medio de su Juez Sr. Llauger, en febrero 19, 1934, declaró sin lugar la moción del demandado. Éste, en agosto 10, 1933, y en marzo 2, 1934, apeló, respectivamente, de la sentencia y de la resolución negándose a dejarla sin efecto y a abrir la rebeldía con permiso para contestar. Ambos recursos se tramitaron conjuntamente. Los autos contienen una transcripción de la evidencia practicada al celebrarse el juicio con la sola asistencia de la parte demandante y al verse la moción del demandado pidiendo que se dejara sin efecto la sentencia.

Nos hemos referido al pleito desde que fué iniciado, a fin de dejar que los hechos fueran hablando por sí mismos. Con conocimiento de ellos, veamos la explicación que ofrece el demandado para justificar su conducta al dejar de archivar la alegación correspondiente cuando fué notificado de la tercera demanda enmendada. Consta de su moción y del *affidavit* de méritos que le acompaña, *affidavit* que cumple con las exigencias de la ley y la jurisprudencia sobre el particular. Además su abogado en el acto de la vista del incidente declaró, con la oposición del abogado de la parte contraria Sr. Dottin, a todo aquello que hacía referencia a lo dicho o prometido por el anterior abogado de dicha parte Sr. Campillo que había fallecido, como sigue:

''Me llamo Emilio S. Belaval. Soy abogado. Juro que el día 31 de marzo de 1932 se me notificó una demanda enmendada por el

demandante en este caso, don José Salas Noa, . . . Que al serme notificada esta demanda me dirigí a la Corte a examinar el récord y me encontré que con anterioridad a esa notificación se habían interpuesto contra dicha demanda unas excepciones previas que fueron declaradas con lugar . . . concediéndosele 10 días al demandante para radicar una demanda enmendada. Que como la fecha en que se había notificado dicha demanda fué el 31 de marzo de 1932, . . . me dirigí al anterior abogado del demandante, Enrique Campillo, para que me explicara a qué se debía dicha irregularidad, . . . el Lic. Campillo me explicó que había estado enfermo y que no había podido hacerla antes.''

Se refiere a las excepciones a la segunda demanda y luego a la tercera y continúa:

''Hablamos frente al libro de radicaciones de la corte, donde había venido a examinar el expediente. Me dijo el señor Campillo que había estado enfermo y seguía enfermo y no había podido, por mucho tiempo, asistir a la oficina en aquella semana, que me suplicaba que tuviera un poco de paciencia. Le dije que no tenía inconveniente ninguno, y le manifesté las dificultades que existían de mi parte para rehacer los autos del caso, porque la muerte del compañero Martínez Dávila extravió la evidencia documental sobre el particular; le expliqué las gestiones hechas cerca del señor La Torre y del taquígrafo del señor Martínez Dávila para conseguir dicha evidencia, y convinimos en que, en vez de radicar ninguna otra alegación, radicaría una contestación cuando pudiera reunir la prueba, y veríamos el pleito en el fondo. Más tarde, como seis o siete días más tarde, nos encontramos frente al edificio de esta corte, en los bajos, comprando sellos de Rentas Internas.

''. . . hablamos . . . sobre la posibilidad de hacer una estipulación en la que el demandante obtendría el montante de la primera causa de acción menos 400 y pico de pesos que como depositario se había quedado con ellos por el producto de la leche vendida. Según la corte verá el demandante aceptó en las primeras dos demandas, que el producto total de la leche de las vacas embargadas lo guardó y estaba dispuesto a hacer una liquidación cuando se le pidiera. Quedamos en eso. Dos o tres meses después hablamos el señor Campillo y yo frente al edificio Bouret, en San Juan, un sábado en la tarde. Le pregunté 'que hay sobre la estipulación en el pleito, de la primera causa de acción menos la leche', y entonces me dice 'no

he podido hablar con el demandante, pero pienso hacerlo de un momento a otro, y le avisaré.' En julio se vió el caso, o el 30 de junio, y el 12 de julio se notificó no al abogado de récord sino al demandante la sentencia. . . Inmediatamente me dirigí al señor Campillo y tengo que exponer a la corte que me fué absolutamente difícil hablar con él. Por fin un día allá para el 20 ó 25 de julio de ese año, por el 25 ó 24, no recuerdo bien, de ese año, pude hablar una mañana con el señor Campillo, en su oficina, quien me manifestó que sentía mucho lo ocurrido, que lo que había pasado es que un señor Tomás Roviera, encargado de este pleito, se lo había llevado a otro abogado; que, desde luego, él estaba a mis órdenes para declarar sobre estos extremos ante esta corte. Más tarde, después de radicada la moción para dejar sin efecto la sentencia me dirigí al señor Campillo y me dijo 'si Ud. necesita mi testimonio en cuanto al entendido de que Ud. contestaría en su fondo y que podríamos transar el pleito bajo esa base y el demandado estuviera conforme, no tengo inconveniente en darlo.' ''

Las razones que tuvo la corte sentenciadora para decidir que la explicación era inaceptable, constan de su resolución, como sigue:

''La corte ha considerado detenidamente la cuestión planteada. Se reduce ésta únicamente a determinar, si atendidas las circunstancias que concurren en el presente caso, es suficiente razón para dejar sin efecto la sentencia dictada y abrir la rebeldía, el que haya mediado cierto convenio oral entre el anterior abogado del demandante (que ha fallecido), y el actual abogado del demandado, mediante el cual creyó entender este último que el demandante aguardaría a que le fuera dado al demandado reconstruir la prueba de su caso a cambio de abstenerse él, a su vez, de radicar alegación alguna que no fuese la contestación a la demanda en su fondo. Este extremo, sobre el cual versó la prueba testifical del demandado, está negado por el demandante, quien aduce que según su información y creencia ninguno de sus abogados, en momento alguno, celebró convenio alguno con el demandado o con los abogados de éste.

'' . . . creemos que si tomamos en consideración el tiempo transcurrido desde la radicación de la tercera demanda hasta la anotación de la rebeldía y luego desde la fecha de dicha anotación hasta en la que se dictara sentencia, la razón aducida por la parte demandada supone un descuido inexcusable de su parte en la substancia-

·ción del presente caso. Esta corte entiende bien que es mejor práctica permitir a las partes que se defiendan y resolver las cuestiones ·oyéndolas, que no la de sostener sentencias en rebeldía cuando se demuestra que el descuido en el cumplimiento de la ley de procedimientos ha sido excusable y no debido al deseo de entorpecer y demorar la cuestión litigiosa, y entiende también, que debe eximir a una persona de los efectos de una sentencia que se hubiere dictado ·en su contra por causa de equivocación, inadvertencia, sorpresa o excusable negligencia, a tenor de lo dispuesto en el artículo 140 del Código de Enjuiciamiento Civil; pero es el criterio de este tribunal ·que el descuido en el cumplimiento de la ley de procedimiento en este caso ha sido inexcusable y que, a juicio de la misma, no medía causa ·de equivocación, inadvertencia, sorpresa o excusable negligencia para eximir al demandado de los efectos de la sentencia dictada.

"Por otro lado, de acuerdo con las reglas para las cortes de distrito en casos civiles (regla 27) ningún convenio entre los abogados o las partes tocante a algún asunto pendiente, tendrá fuerza, a menos que sea hecho por escrito, firmado y entregado con los demás documentos para que forme parte del récord; o a menos que sea hecho en corte abierta con el mismo fin. Habiéndose hecho referencia solamente a cierto acuerdo oral habido entre los abogados de las partes y teniendo en cuenta el carácter indefinido e incierto en que se han expuesto los términos del mismo en lo que respecta al tiempo ·concedido al demandado para presentar su contestación, así como las demás circunstancias que se desprenden de los autos, estamos convencidos de que no es éste un caso que merezca ser resuelto en favor de la parte demandada. Lo contrario sería mal uso de nuestra ·discreción."

Hemos vacilado mucho en verdad con respecto a la actitud que debemos adoptar en el presente caso, habiendo ejercitado como ejercitó el juez sentenciador su discreción en contra del demandado cuya negligencia o falta de previsión al dejar de reducir a escrito el convenio que invoca con el abogado del demandante, es evidente.

Pero tras una detenida consideración del asunto encontramos en la misma extraordinaria extensión del abandono del abogado del demandado, una confirmación de que es cierto lo que dice en cuanto a sus conversaciones y convenios con el abogado Sr. Campillo de la parte contraria, porque no se

explica de otro modo que un litigante que actúa como lo hizo
el demandado en este pleito y que obtiene las decisiones fa-
vorables que obtuvo, abandone su posición y permita que se
dicte contra él una sentencia sobre la base de una demanda
enmendada que reclamaba de él más que las anteriores en
su primera causa de acción y que variaba substancialmente
la segunda.

Es ciertamente la última demanda enmendada sobre la en
que descansa el litigio, pero cuando se trata de un caso en
que lo que está ante la conciencia judicial es el hecho de si
debe o no anularse una sentencia obtenida a virtud de las
alegaciones y las pruebas de una sola de las partes para
dar una nueva oportunidad a la otra parte de intervenir en
la contienda, de modo que el fallo se dicte con mayores ga-
rantías de acierto, entonces puede escrudiñarse en las cons-
tancias de los autos para penetrar bien en la verdad de lo
ocurrido y en la probable justicia de la reclamación en su
totalidad o en parte.

Nada más creemos que debemos expresar, ante el temor
de que nuestros razonamientos pudieran invocarse luego
como que prejuzgaban los méritos del litigio. Hemos exa-
minado las defensas que alega que tiene la parte demandada
y no estamos convencidos de que todas sean procedentes,
pero sí estimamos que de probarse algunas de ellas, habría
que pronunciar una sentencia que sería substancialmente dis-
tinta de la dictada.

Habiendo llegado finalmente al convencimiento de que el
error de la corte al declarar sin lugar la moción del deman-
dado de agosto 4, 1933, pidiendo que se dejara sin efecto la
sentencia dictada contra el mismo en rebeldía, se abriera ésta
y se le concediera permiso para contestar, es manifiesto, ya
que las circunstancias concurrentes demandaban el ejercicio
de su discreción en pro de una decisión del pleito sobre sus
méritos, su resolución debe revocarse dictándose en su lugar
otra por virtud de la cual se deje sin efecto la sentencia en

rebeldía dictada el 30 de junio de 1933, se abra la rebeldía y se permita al demandado la radicación de su contestación.

*Claro está que dejada sin efecto la sentencia, resulta académico el recurso de apelación interpuesto directamente contra ella debiendo en tal virtud desestimarse.*

El Juez Asociado Señor Córdova Dávila no intervino.